UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00238-FDW-SCR

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| AUTOGUARD ADVANTAGE | ) | |
| CORPORATION; DIMENSION SERVICE | ) | |
| CORPORATION; SING FOR SERVICE, | ) | |
| LLC; LEXINGTON NATIONAL | ) | |
| INSURANCE CORPORATION; PELICAN | ) | |
| INVESTMENT HOLDINGS GROUP, LLC; | ) | |
| VAJIRA SAMARARATNE; AND | ) | |
| JOHN/JANE DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

THIS MATTER is before the Court on the Motion to Dismiss filed by defendant Sing for Service d/b/a Mepco ("Mepco"), (Doc. No. 16, as amended by Doc. No. 21), as well as the Motion to Dismiss filed by Defendants Autoguard Advantage Corporation ("Autoguard"), Dimension Service Corporation ("Dimension"), and Lexington National Insurance ("Lexington"), (Doc. No. 26). The Court advised Plaintiff, who appears pro se, of the burden he carries in responding to these motions, (Doc. No. 30). These motions have been fully briefed by the parties, (Doc. Nos. 22, 29, 31, 32, 33, 36), and are ripe for ruling. Defendants Autoguard, Dimension, and Lexington also filed a Motion to Strike Plaintiff's Response, (Doc. No. 32), as untimely. (Doc. No. 34). The Court summarily DENIES the Motion to Strike in favor of resolving the issues on the merits, and for the reasons set forth below, the Court GRANTS the Motions to Dismiss.

1

# I.  BACKGROUND

Plaintiff's Amended Complaint asserts claims against all named Defendants for violations of the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) & (c), 47 C.F.R. § 64.1200(d), and the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-102(c)(1)-(4), (d), (e), (i), & 75-104(a).  (Doc. No. 4.)  The Supreme Court has explained the backdrop for TCPA litigation:

> In 1991, Congress passed the TCPA to address the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers. . . . Congress made it unlawful to make certain calls using any automatic telephone dialing system to emergency telephone lines, to guest rooms or patient rooms of a hospital, or to any telephone number assigned to a paging service or cellular telephone service without the prior express consent of the called party.  The TCPA creates a private right of action for persons to sue to enjoin unlawful uses of autodialers and to recover up to $1,500 per violation or three times the plaintiffs' actual monetary losses.

Facebook, Inc. v. Duguid, 592 U.S. 395, 399 (2021) (cleaned up; citing 47 U.S.C. § 227(b)); see also Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n, 923 F.3d 159, 162 (4th Cir. 2019), aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. __, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020).

Plaintiff is no stranger to the court system, as he has filed numerous actions asserting claims under the TCPA and its state equivalents.[1]  While this background is instructive in terms of

---

[1] Defendants Autoguard, Dimension, and Lexington contend Plaintiff has filed nearly 200 lawsuits nationwide, (Doc. No. 29, p. 5), and they cite to a sampling of the cases Plaintiff has litigated in the past four years: Cunningham v. Performance SLC LLC, No. SACV1801093AGAGRX, 2019 WL 13032524 (C.D. Cal. Apr. 30, 2019) (alleging that Plaintiff is a "citizen of the State of Texas."); Cunningham v. Foresters Fin. Servs., Inc., No. 2:17-CV-77-TLS, 2022 WL 683649 (N.D. Ind. Mar. 8, 2022) (granting defendant's Motion for Summary Judgment in case where Plaintiff claimed to have a Tennessee mailing address); Cunningham v. Lester, No. CV DKC 18-3486, 2020 WL 362821 (D. Md. Jan. 22, 2020), aff'd, 990 F.3d 361 (4th Cir. 2021) (granting defendants' Motion to Dismiss on separate grounds in case where Plaintiff claimed residency in Texas); Cunningham v. Capital Advance Solutions, LLC, et al., 2019 WL 7294310 (D.N.J. Dec. 30, 2019) (alleging Tennessee mailing address); Cunningham v. Big Think Cap. Inc., No. 21CV02162DRHJMW, 2021 WL 4407749 (E.D.N.Y. Sept. 27, 2021) (finding that "Plaintiff is a citizen and resident of Texas."); Cunningham v. Daybreak Solar Power, LLC, No. 3:22-CV-9-MOC-DCK, 2022 WL 2759074 (W.D.N.C. July 14, 2022) (alleging residency in Texas); Cunningham v. Chiorzi, No. 3:20-CV-386-SI, 2020 WL 3104508 (D. Or. June 11, 2020) (granting 12(b)(6) dismissal where Plaintiff claimed to be present in Texas at all relevant times); Cunningham v. Health Plan Intermediaries Holdings, LLC, No. 3:18-CV-00518, 2021 WL 1946645 (M.D. Tenn. May

2

evaluating Plaintiff's familiarity with the Federal Rules of Civil Procedure and federal court system in general, it does not have any bearing on the merits of his action here.

In this case, Plaintiff alleges he received calls "on behalf of each Defendants [sic] in this case" that were initiated using an automatic telephone dialing system ("ATDS"). (Id. at ¶39). Plaintiff contends, "The calls had a delay of 3-4 seconds of dead air after the Plaintiff picked up the phone before the agent answers the call indicating the calls were initiated using an ATDS. The Plaintiff received calls directly from the corporations and on behalf of these corporations by 3rd party telemarketers for both direct and vicarious liability in this case." (Id.). These generalized allegations are made against all Defendants without distinction. To support these claims, Plaintiff includes only a few factual allegations describing Defendants' purported wrongful conduct:

> 35.     The Plaintiff received multiple calls on behalf of the multiple defendant entities selling the extended car warranty services for the benefit of each of the above named entities, which appeared in the car warranty service booklet, which was mailed to the Plaintiff. These calls resulted in a policy DAE1027594 being sold on or about 10/27/2021[.]

> 36.     The plaintiff was sent a policy that listed each of the above named defendants in it or their respective corporations for the individuals indicating that they engaged in a common enterprise to harass multiple consumers by peppering them with unwanted robocalls selling their overpriced extended car warranty

14, 2021) (granting 12(b)(6) dismissal where Plaintiff alleged Tennessee residency); Cunningham v. Allstate Prop. & Cas. Ins. Co., No. 421CV00126ALMCAN, 2021 WL 1903800 (E.D. Tex. Apr. 21, 2021) (alleging Plaintiff was "a Texas resident" and "present in Texas for all calls in this case in Collin County"); Cunningham v. Vivint, Inc., No. 219CV00568DBBCMR, 2022 WL 2291669 (D. Utah June 24, 2022) (denying Plaintiff's Motion for Class Certification in claim where Plaintiff claimed residency in Texas); Cunningham v. Montes, No. 16-CV-761-JDP, 2020 WL 9347656 (W.D. Wis. Feb. 7, 2020) (alleging Tennessee residency); Mey v. DIRECTV, LLC, No. 5:17-CV-179, 2021 WL 6882423 (N.D.W. Va. Feb. 25, 2021) (dismissing Plaintiff as a party); Cunningham v. ASI, LLC, No. 18-CV-183-F, 2019 WL 5399820 (D. Wyo. Jan. 9, 2019) (dismissing Plaintiff's complaint for lack of personal jurisdiction over named defendants). Defendant Sing for Service requests this Court take judicial notice, pursuant to Federal Rule of Evidence 201, of various publicly-available articles describing Plaintiff's litigation scheme: John O'Brien, Phoney Lawsuits: Man Has Filed 80 Lawsuits and Uses Sleuthing Skills to Track Down Defendants, Forbes (Nov. 1, 2017); Active Prospect, Don't Call Craig Cunningham, (Nov. 10, 2017), available at https://activeprospect.com/dont-call-craig-cunningham-tcpa/ (visited 2/27/2024) (referencing filing of over 150 TCPA lawsuits); Accounts Recovery, Professional Plaintiff Known for Suing Collection Agencies Loses TCPA Appeal (July 31, 2018) DNC, A Serial Litigator's Success Story (Sept. 5, 2017), available at https://www.dnc.com/news/80-lawsuits-serial-litigators-success-story (visited 2/27/2024) (referencing filing of 80 consumer protection lawsuits); Charmaine Little, Man Who Has Filed at Least 83 TCPA Lawsuit Loses One in Tennessee Court, Legal NewsLine (Jun. 5, 2018), available at https://legalnewsline.com/stories/511422467-man-who-has-filed-at-least-83-tcpa-lawsuits-loses-one-in-tennessee-court (visited 2/27/2024) (referencing filing of at least 83 TCPA lawsuits).

3

services.  As an example, Autoguard Advantage is listed as the "Service Contract Provider" for this contact and Dimension Service Corporation is listed as the "Administrator" and Affordable Auto Protection is listed as the seller of the policy.

(Doc. No. 4 at ¶¶ 35-36.)  Notably, other than the initial paragraph identifying the parties, Plaintiff's Amended Complaint does not mention Lexington, Sing for Service, or Mepco by name in *any* factual allegation to support his claim.  (Doc. No. 4, ¶ 4.)  All appearing Defendants—Autoguard, Dimension, Lexington, and Sing for Service d/b/a Mepco—seek dismissal of all claims against them.

## II.    FAILURE TO PROSECUTE

Two Defendants named in the Complaint—Pelican Investment Holdings Group, LLC d/b/a AAP, and Vajira Samararatne—have not appeared.  Although Plaintiff filed proof of service for all other Defendants, (Doc. Nos. 6, 7), Plaintiff has never filed proof of service for AAP or Samararatne, and Plaintiff never requested additional time to serve them.  See Fed. R. Civ. P. 4. More than nine months has elapsed since Plaintiff filed his Amended Complaint, and without any proof of service or a request to extend time for doing so, the Court hereby provides NOTICE to Plaintiff that it intends to dismiss this action without prejudice against those Defendants for failure to comply with Fed. R. Civ. P. 4(m), which requires service to be made within 90 days after the complaint is filed, and failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

In order to avoid dismissal, the Court DIRECTS Plaintiff to SHOW CAUSE within twenty-one (21) days of this Order why this action should not be dismissed as against Pelican Investment Holdings Group, LLC d/b/a AAP, and Vajira Samararatne for failure to serve and failure to prosecute in accordance with the Federal Rules of Civil Procedure.  Failure to timely and adequately respond and show cause will result in summary dismissal of the Amended Complaint without prejudice.

### III. MOTIONS TO DISMISS

Defendants Autoguard, Dimension, and Lexington move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Mepco moves to dismiss this action against it based on Plaintiff's failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Because subject matter jurisdiction is a threshold issue, the Court addresses it first. Next, the Court considers whether the Court has personal jurisdiction over those Defendants that have raised that issue. Finally, the Court addresses all appearing Defendants' arguments made pursuant to Rule 12(b)(6). As explained below, this Court lacks subject matter jurisdiction. Also, lack of personal jurisdiction and failure to state a claim provide alternative grounds for dismissal of Plaintiff's Amended Complaint.

### A. Standing and Subject Matter Jurisdiction

In order for Plaintiff to pursue this action in this Court, he must have standing to sue. Federal district courts exercise limited jurisdiction in that the courts "possess only the jurisdiction authorized . . . by the United States Constitution and by federal statute." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citation omitted). Article III of the United States Constitution outlines the federal court's jurisdictional limits. See U.S. Const., art. III, § 2; Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 & n.5 (2014). Relief is only appropriate when there is an actual case or controversy under Article III. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004). For any case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the

court's remedial powers on his behalf." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

Because standing under Article III of the Constitution implicates a federal court's subject matter jurisdiction, the court cannot reach the merits of a dispute without confirming that standing exists. See PEM Entities LLC v. Cnty. of Franklin, 57 F.4th 178, 182 (4th Cir. 2023). Rule 12(b)(1) governs the court's analysis of a motion to dismiss for lack of Article III standing because it is premised on the court lacking subject matter jurisdiction to hear the case. See Beyond Sys., Inc. v. Kraft Foods, Inc., 777 F.3d 712, 715–16 (4th Cir. 2015). When assessing whether a plaintiff possesses Article III standing to sue, a court "accept[s] as valid the merits of [the plaintiff's] legal claims." See Fed. Election Comm'n v. Cruz, 596 U.S. 289, 298 (2022) (citation omitted). The court may also "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014). The issue of standing may be raised at any time by either party or *sua sponte* by the Court. See Buscemi v. Bell, 964 F.3d 252, 258 (4th Cir. 2020) (citing Benham v. City of Charlotte, 635 F.3d 129, 134 (4th Cir. 2011)). If a party does not have standing to sue, the court lacks subject matter jurisdiction and must dismiss the action. See White Tail Park, Inc., 413 F.3d at 459; Fed. R. Civ. P. 12(h)(3).

"The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." Cruz, 596 U.S. at 296 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal

court to resolve." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Casillas v. Madison Avenue Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)). "It is important to avoid 'confus[ing] weakness on the merits with absence of Article III standing.'" PEM Entities LLC v. Cnty. of Franklin, 57 F.4th 178, 182 (4th Cir. 2023) (quoting Davis v. United States, 564 U.S. 229, 249 n.10, (2011)).

Here, construing the allegations and evidence in the light most favorable to Plaintiff, the Court concludes he has sufficiently pled a concrete and particularized injury. See, e.g., Beard v. John Hiester Chevrolet, LLC, 640 F. Supp. 3d 420 (E.D.N.C. 2022); see also Fishman v. Mediastratx, LLC,, No. 2:20-CV-83-D, 2021 WL 3559639, at *3 (E.D.N.C. Aug. 10, 2021) (citing Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 652–53 (4th Cir. 2019)); Mey v. Venture Data, LLC, 245 F. Supp. 3d 771 (N.D. W. Va. 2017). The standing inquiry, however, does not end there.

Plaintiff has not plausibly alleged or carried his burden to show that his injury is "fairly traceable to the challenged conduct of" Defendants Autoguard, Dimension, Lexington, and Mepco. Cruz, 596 U.S. at 296. The Fourth Circuit has explained:

> To satisfy standing's causation requirement, the alleged injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. At the motion-to-dismiss stage, this burden is relatively modest, and lower than the causation showing required to prevail in a tort suit. Proximate causation is not a requirement of Article III standing.

DiCocco v. Garland, 52 F.4th 588, 592 (4th Cir. 2022) (cleaned up). In other words, "for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant . . . ." Collins v. Yellen, 594 U.S. __, __, 141 S. Ct. 1761, 1779 (2021) (quotation and citation omitted).

While the Court must construe all allegations as true and draw all *reasonable* inferences in Plaintiff's favor, nothing on the face of the Amended Complaint or in the record before the Court

suggests Plaintiff's injuries are fairly traceable to *any* unlawful conduct by Defendants Autoguard, Dimension, Lexington, or Mepco, particularly where it is clear that "AAP" made the calls.[2] At best, Plaintiff's allegations assert Defendants Autoguard and Dimension were connected to the *policy* issued by AAP because they were listed as the service contract provider and administrator, respectively. This allegation is insufficient—on its own—to plausibly allege traceability to the wrongful conduct for these Defendants.

Plaintiff's Amended Complaint and Declaration acknowledge "AAP" made the calls and issued the policy, but Plaintiff fails to provide *any* allegation to attribute any of the wrongful conduct—the ATDS calls—to Autoguard, Dimension, Lexington, or Mepco. The Amended Complaint does not plausibly allege direct or indirect liability for the violations. For example, no allegation suggests these Defendants were aware of any calls that AAP made to Plaintiff, and Plaintiff fails to allege the existence of an agreement among AAP and any other Defendant or plausibly allege ratification by any other Defendant, which might be suggestive of vicarious liability.[3] Furthermore, no allegation plausibly alleges an agency relationship.[4] Nothing in the record before the Court advances Plaintiff's bare assertions and conclusory allegations that all

---

[2] The Amended Complaint expressly indicates "Pelican Investment Holdings Group, LLC, DBA AAP" is a separate and distinct party to this suit. (Doc. No. 4, p. 1 "Pelican Investment Holdings Group, LLC, DBA AAP, is a Florida corporation . . . ."). As is noted throughout this Order, nothing in the Amended Complaint or record before the Court pleads or suggests a legal relationship between "Pelican Investment Holdings Group, LLC, DBA AAP" and any other Defendant.

[3] See, e.g., Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 252 (4th Cir. 2018) ("According to the FCC, vicarious liability under the TCPA is governed by the federal common law of agency, including not only formal agency, but also principles of apparent authority and ratification."). In Hodgin, the Fourth Circuit further explained, "'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. . . . However, a party 'is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge.'" 885 F.3d at 252 (quoting Restatement (Third) of Agency §§ 4.01(1), 4.06 (2006)).

[4] "A 'defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.'" Wilson v. PL Phase One Operations L.P., 422 F. Supp. 3d 971, 980 (D. Md. 2019) (quoting Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016)). Here, Plaintiff has failed to plead facts sufficient to support a theory of vicarious liability under the TCPA because Plaintiff's allegations do not show plausibly that the party who actually, physically initiated the telephone calls at issue was subject to any Defendant's control in an agency relationship.

Defendants violated the TCPA, particularly where the conclusory allegations attempting to connect these Defendants are speculative and lack even general factual support. Put simply, Plaintiff's allegations neither plausibly assert a "causal connection between the injury and the conduct complained of" nor plausibly allege his "injury [is] fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (cleaned up; citing Lujan, 504 U.S. 555, 559–61).

Even considering the deficiencies in pleading here, Plaintiff had the opportunity to submit additional evidence sufficient to demonstrate standing and this Court's subject matter jurisdiction over these Defendants, and this Court advised Plaintiff of that burden and opportunity. Of course, Plaintiff's history of litigation also demonstrates his familiarity with the burden he carried in responding to the instant motions. Evidence is not required so long as the allegations are sufficient to trace the injury to each Defendant's unlawful conduct. But here, where the allegations fail to meet the low standard, evidentiary support could have been helpful to Plaintiff. Although Plaintiff appears to have a copy of this policy—as indicated by his submission of one page—nothing in the evidentiary record before the Court demonstrates Autoguard's or Dimensions's association to that policy.

Plaintiff fails to sufficiently allege or provide evidence of a traceable connection between his injury, the conduct complained of, and the actions of the responding Defendants. Accordingly, Plaintiff lacks standing and this Court lacks subject matter jurisdiction over the claims asserted against Defendants Autoguard, Dimension, Lexington, and Mepco.

## B.    Personal Jurisdiction

As an alternative basis for dismissal, Defendants Autoguard, Dimension, and Lexington argue this Court lacks personal jurisdiction over them. In addition to subject matter jurisdiction, this Court must also have personal jurisdiction over these Defendants.[5] See Fed. R. Civ. Proc. 12(h)(1) (a party waives the defense of personal jurisdiction if it is not asserted in a motion served in response to a complaint).

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" CoStar Realty Info., Inc. v. Meissner, 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Id.; see also Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media & Ent., LLC v. Associated Broad. Co., 911 F.3d 192, 196–97 (4th Cir. 2018). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all *reasonable* inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo,

---

[5] Because it has not been raised, any argument with respect to the Court's jurisdiction over Mepco has been waived, and any lack of personal jurisdiction does *not* provide an alternative ground to relief for Mepco.

N.V., 2 F.3d 56, 60 (4th Cir. 1993) (emphasis added). "In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350 (4th Cir. 2020).

The parties have not engaged in full discovery. Accordingly, Plaintiff need only make a prima facie showing of personal jurisdiction.

There are two ways—general and specific jurisdiction—for a federal court to exercise personal jurisdiction over a defendant. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014). General jurisdiction exists "when a defendant is 'essentially at home' in the State. General jurisdiction, as its name implies, extends to any and all claims brought against a defendant . . . [but] only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 141 S. Ct. 1017, 1024 (2021) (citaitons omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty., 582 U.S. 255, 262 (2017) (emphasis in original) (citing Goodyear Dunlop Tires Operations, S.A., v. Brown, 564 U.S. 915, 919 (2011)). General jurisdiction exists where a corporation's contacts with a state are so "continuous and systematic as to render [the corporation] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quoting Goodyear, 564 U.S. at 920) (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are "paradigm bases for general jurisdiction." Daimler AG, 571 U.S. at 137 (cleaned up; citations omitted); see also Ford Motor Co., 141 S. Ct. at 1024.

Here, Plaintiff fails to make a prima facie showing that these Defendants are incorporated in or have a principal place of business in North Carolina. The Amended Complaint identifies Autoguard as a citizen of Ohio, Dimension as a citizen of Ohio, and Lexington as a citizen of Maryland. (Doc. No. 4, pp.3-4). None of these Defendants are "at home" in North Carolina, and Plaintiff does not attempt to argue otherwise. There is no general personal jurisdiction over them in this state.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." Ford Motor Co., 592 U.S. 351, 141 S. Ct. at 1024. Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy." Goodyear, 564 U.S. at 918 (citations omitted). Specific personal jurisdiction over a nonresident defendant requires compliance with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process Clause. Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (cleaned up). The minimum contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation omitted). The minimum contacts analysis ensures that a defendant is not haled into a jurisdiction's court "solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp., 471 U.S. at 475

(quotations omitted); see Ford Motor Co., 141 S. Ct. at 1025. The minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quotation omitted); see Ford Motor Co., 141 S. Ct. at 1024–26.

The Fourth Circuit has synthesized into three prongs the due process requirements to determine specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (cleaned up).

In cases brought under the TCPA, some district courts have found specific personal jurisdiction to exist "when it is reasonable to infer that defendant purposefully aimed its conduct at North Carolina by contacting directly plaintiff's North Carolina telephone number." Davis v. Reliance First Capital, No. 7:22-CV-18, 2023 WL 1982354, at *2 (E.D.N.C. Feb. 13, 2023) (unpublished) (cleaned up) (also noting the plaintiff alleged the defendant has conducted business transactions in North Carolina since 2008, maintains a regional office in North Carolina, and has a license to perform financial services from the North Carolina Commissioner of Banks); see Slominski v. Globe Life Inc., et al., No. 7:23-CV-1081-D, 2024 WL 556978, at *4 (E.D.N.C. Feb. 12, 2024) (concluding the plaintiff alleged prima facie specific jurisdiction in TCPA case where the plaintiff alleged she received multiple unsolicited calls in the Eastern District of North Carolina from that named defendant); Jones v. Mut. of Omaha Ins. Co., 639 F. Supp. 3d 537, 550 (D. Md. 2022) ("[I]n the context of the TCPA, personal jurisdiction is proper in the District where an unlawful communication is received." (cleaned up)); Mey v. Castle L. Grp., 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019) ("this Court finds that calling [the plaintiff's] number in West Virginia

13

times, as alleged in the complaint, demonstrates that [the defendant] purposefully availed himself of the privilege of conducting business in the state of West Virginia.").

Defendants Autoguard, Dimension, and Lexington contend the materials before the Court—including the Amended Complaint, Plaintiff's response in opposition to the instant motion and exhibits thereto, and Plaintiff's Declaration—fail to sufficiently show this Court has personal jurisdiction over them. Plaintiff alleges he—using "the pseudonum Dan [C]ooper"—was "called on" a phone number with a 980 area code, which is local to the Charlotte area, and he contends the "number is for a service that the Plaintiff is charged by the minute per call" and "is a residential number and is used by the Plaintiff solely." (Doc. No. 4, p. 7.) The Amended Complaint also provides, "The Plaintiff received multiple calls on behalf of the multiple related defendant entities selling the extended car warranty services . . . . These calls resulted in a policy DAE1027594 being sold on or about 10/27/2021." (Id.) Plaintiff alleges he "was sent a policy that listed each of the above named defendants in it or their respective corporations for the individuals . . . . Autoguard Advantage is listed as the 'Service Contract Provider' for this contract and Dimension Service Corporation is listed as the 'Administrator.'" (Id.)

In his response to the instant motion, Plaintiff argues Defendants Autoguard, Dimension, and Lexington have subjected themselves to the specific personal jurisdiction of North Carolina by "placing calls to a North Carolina number, selling a car warranty to a North Carolina resident, charging a North Carolina resident's card and mailing a copy of the policy to a North Carolina resident." (Doc. No. 32, p. 5.) He notes that these allegations center around "at least one phone call in October 2021." (Id., p. 6.) Plaintiff attaches to his response the "policy" that is also referenced in his Amended Complaint with the same "Service Contract Number" and addressed to "Dan Cooper, 650 E Stonewall St Apt 208 Charlotte, NC 28202-3401." (Doc. No. 32-1.)

14

Importantly, this document does not reference any other Defendants by name and appears on its face to be issued by "AAP, 1300 Old Congress Road, West Palm Beach, FL 33409." (Id.).

Plaintiff also submitted a Declaration in support of his opposition response, whereby he declares "under the penalty of perjury" that he "received numerous car warranty calls from AAP in the fall of 2021 soliciting me to obtain a car warranty. . . . After trying to identify the calling party that was initiating these annoying and unwanted calls over several weeks, I was finally able to continue a call through the full process . . . [and] used the pseudonym 'Dan Cooper' . . [and] the address of 650 E. Stonewall St apt 208 where I was renting an apartment in Charlotte, NC." (Doc. No. 32-2, pp. 2-3.)

Collectively, the materials upon which Plaintiff relies are insufficient to make a prima facie showing of specific personal jurisdiction for Defendants Autoguard, Dimension, or Lexington. While the Court must draw all *reasonable* inferences in Plaintiff's favor, nothing in the record before the Court connects Defendants Autoguard, Dimension, or Lexington to these *calls*— allegedly in violation of the TCPA—made by a distinct entity: "AAP." At best, Plaintiff's allegations regarding Autoguard's and Dimension's names appearing on the *policy* issued by AAP are insufficient to confer personal jurisdiction without a plausible connection to the calls, which form the basis for his claims. ALS Scan, Inc., 293 F.3d at 712 (emphasis added).

As explained in the standing analysis above, the record before the Court is insufficient to attribute any of the wrongful conduct—the AAP calls made using ATDS—to Autoguard, Dimension, or Lexington. For example, no allegation suggests these Defendants directly initiated any calls. No allegation suggests these Defendants were aware of any calls by AAP, and no allegation contends Defendants were aware of *any* marketing strategies employed by AAP and directed to potential consumers using ATDS on behalf of Defendants. Plaintiff does not allege a

telemarking agreement or contract among AAP and any Defendants, which might be suggestive of vicarious liability. The unsubstantiated identification of Autoguard and Dimension on the policy, without more, is insufficient for Plaintiff to carry his burden to show either of these Defendants—or Lexington, who is not even mentioned in connection with the policy— purposefully availed itself of the privilege of conducting activities in North Carolina or that Plaintiff's claims arise out of those activities.[6]

Because Plaintiff cannot establish minimum contacts, the Court lacks personal jurisdiction over Defendants Autoguard, Dimension, and Lexington. Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 281 n.9 (4th Cir. 2009) (recognizing that where a party has failed to satisfy the first prong of the specific jurisdiction test, the court need not analyze the remaining prongs). The Court grants the motion to dismiss for lack of personal jurisdiction and finds that to be an alternative basis to dismiss all claims asserted against Autoguard, Dimension, and Lexington in the Amended Complaint.

### C. Failure to State a Claim

As an additional alternative basis for dismissal, Defendants Autoguard, Dimension, Lexington, and Mepco seek dismissal of the claims against them pursuant to Rule 12(b)(6) of the

---

[6] To the extent Plaintiff seeks discovery to determine personal jurisdiction over these moving Defendants, this Court denies such a broad request unsupported by any basis in law or fact under this record. In so ruling, the Court finds entirely persuasive and incorporates the reasoning set forth in a different case involving Plaintiff:

> Plaintiff has not made a persuasive showing that discovery should be permitted on the issue of the personal jurisdiction of the Individual Defendants, if for no other reason, because Plaintiff has amended his complaint twice and still fails to establish personal jurisdiction. Any decision by the Court on this issue is appropriately made upon the record that is presently before the Court without the need of additional discovery or an evidentiary hearing. Additionally, the discovery requested by Plaintiff is nothing more than an open-water fishing expedition by which he simply hopes to net some information to support his claims.

Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1209 n.7 (M.D. Tenn. 2017) (finding no personal jurisdiction because "the factual allegations set out in the Second Amended Complaint upon which Plaintiff relies for asserting personal jurisdiction over them, are conclusory, self-serving, and woefully insufficient to support a finding of specific personal jurisdiction over the Individual Defendants. There are no facts alleged showing that any of the Individual Defendants had any connection with Tennessee whatsoever or took any action to purposefully avail themselves to Tennessee.").

16

Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. The well-pleaded facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678.

In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (cleaned up). A court, however, need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678-79.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. Twombly, 550 U.S. at 555-56.

Here, Plaintiff asserts claims against Defendants for violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d)(1, 2, 4); and N.C. Gen. Stat. §§ 75-102, 75-

104.  To state a claim under Section 227(b)(1)(A)(iii) of the TCPA, a plaintiff must allege: (1) the defendant initiated a telephone call to a cellular phone number, (2) using an automatic telephone dialing system, and (3) without the prior express consent of the called party. See 47 U.S.C. § 227(b)(1)(A)(iii); Connor v. Priority Concepts, Inc., No. 2:23-CV-3726, 2024 WL 199138, at *2 (D.S.C. Jan. 18, 2024) (citing Abramson v. AP Gas & Electric (PA), No. 22-1299, 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023) (reciting elements to state a claim for residential calls under 47 U.S.C. § 227(b)(1)(B)).  Turning to the alleged regulatory violation associated with the TCPA, section 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). In order to allege a violation, at least one court has explained:

> Section 64.1200(d) then lists several 'minimum standards' that these procedures must meet, including, inter alia, (1) providing a written policy for maintaining a do-not-call list (section 1200(d)(1)); (2) training personnel in the existence and use of the do-not-call list (section 1200(d)(2)); (3) ensuring methods are in place for recording a subscriber's request to not be contacted and ensuring that request is honored in not more than 30 days (section 1200(d)(3)); and (4) maintaining subscribers on the do-not-call list for a minimum of five years (section 1200(d)(6)).

Fischman v Mediastratx, LLC, No. 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021) (finding private right of action to exist under 47 C.F.R. § 64.1200(d) and concluding the plaintiff sufficiently plead a violation); but see Wilson v. PL Phase One Operations L.P., 422 F. Supp. 3d 971, 982 (D. Md. 2019) (recognizing  "The United States Court of Appeals for the Fourth Circuit has not addressed whether 47 C.F.R § 64.1200(d) provides a private right of action;" and adopting reasoning that "47 C.F.R § 64.1200(d) appears to fall within subsection d's scope, which does not provide a private right of action." (citing Worsham v. Travel Options, Inc., No. 14-cv-

2749-JKB, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), aff'd, 678 F.App'x 165 (4th Cir. 2017)).

Plaintiff's Amended Complaint fails to set forth *any* factual allegations against Autoguard, Dimension, Lexington, Mepco to plausibly state a claim for relief under 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d)(1, 2, 4). The Court summarily incorporates its analysis in the discussion above regarding the deficiency of the subject matter and personal jurisdictional allegations against Autoguard, Dimension, and Lexington. In short, the allegations fall short of plausibly alleging these Defendants initiated a telephone call to Plaintiff using an ATDS, and the allegations fail to allege the interrelationship among these Defendants and AAP or outline the role played by each with AAP, who Plaintiff maintains initiated and made the calls in violation of the TCPA. See, e.g., Aaronson v. CHW Grp., Inc., No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." (collecting cases)). In other words, Plaintiff's "[c]onclusory boilerplate allegation[s] plainly fail to provide any facts to demonstrate an agency relationship between defendant and the party who physically initiated the call." Aaronson, 2019 WL 8953349, at *3. Without plausibly alleging direct or vicarious liability, Plaintiff fails to state a claim for relief against these three Defendants.

Focusing on Mepco, it bears emphasizing—similar to Lexington—the Amended Complaint's only reference to Mepco appears in the identification of the parties, (Doc. No. 4, pp. 2), and Plaintiff's general reference to all Defendants collectively as engaging in the allegedly wrongful conduct is insufficient here to set forth a plausible claim under the TCPA or regulatory provisions. For example, Plaintiff makes no allegation to plausibly connect Mepco to the calls

made by AAP. As with the other Defendants, no allegations suggest an agency, contractual, or other legally cognizable relationship sufficient to plausibly assert Mepco's connection to AAP. Put simply, Plaintiff has failed to provide Mepco with fair notice of the claims against it, and the allegations are wholly insufficient for this Court to draw a reasonable inference that Mepco is liable for the misconduct alleged.

As it pertains to all Defendants, Plaintiff makes no allegation beyond conclusory boilerplate language to support a cause of action under 47 C.F.R. § 64.1200(d)(1, 2, 4). *No* allegation suggests Plaintiff informed any Defendant to stop calling him, requested to be added to an internal do-not-call list, or that after any such request, the calls persisted. See, e.g., Slominski, No. 7:23-CV-1081-D, 2024 WL 556978, at *8 (dismissing claim under 47 C.F.R. § 64.1200(d)(3)). This claim also fails.

Finally, because the Amended Complaint fails to plausibly allege any claim under federal law, even if the Court had subject matter and personal jurisdiction, which it does not, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim under North Carolina law.

For these reasons, Plaintiff has failed to plausibly allege a cause of action against Autoguard, Dimension, Lexington, and Mepco, and dismissal pursuant to Rule 12(b)(6) is an appropriate alternative basis for dismissal of the Amended Complaint against these Defendants.

### IV. CONCLUSION

In sum, Plaintiff's Amended Complaint uses boilerplate and generic allegations to cast a wide net and assert claims against the moving Defendants: Autoguard, Dimension, Lexington, and Mepco. The Court declines to condone this fishing expedition of a lawsuit to discern the relationship between them and "AAP," the only party specifically alleged to have engaged in conduct potentially violative of the TCPA. For the reasons above, dismissal of the Amended

Complaint is appropriate as against Defendants Autoguard, Dimension, Lexington, and Mepco based on Plaintiff's failure to demonstrate standing and the Court's lack of subject matter jurisdiction over those Defendants. As alternative grounds for dismissal, this Court lacks personal jurisdiction over Defendants Autoguard, Dimension, and Lexington, and in any event, Plaintiff has failed to plausibly state a federal claim against Defendants Autoguard, Dimension, Lexington, and Mepco. Because the Court lacks subject matter jurisdiction, and in light of ruling alternative grounds also support dismissal here, this dismissal is without prejudice but without leave to amend.[7]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike, (Doc. No. 34), is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, (Doc. Nos. 21, 25), are GRANTED, and Defendant Sing For Service's original Motion to Dismiss, (Doc. No. 16), is DENIED AS MOOT because it was amended in a subsequent filing to add the Certificate of Service.

**IT IS FURTHER ORDERED** that Plaintiff MUST SHOW CAUSE within twenty-one (21) days of this Order why this action should not be dismissed as against Pelican Investment Holdings Group, LLC d/b/a AAP, and Vajira Samararatne for failure to serve and failure to

---

[7] This ruling, therefore, does not preclude Plaintiff's ability to file a new suit—potentially in a different jurisdiction—against these Defendants. The Court declines to allow an opportunity to amend in this matter, particularly in light of Plaintiff's previous filing of an Amended Complaint in this case and because he did not file a motion to amend, despite his familiarity with the Federal Rules of Civil Procedure and applicable law governing this Court's jurisdiction over TCPA claims. United States ex rel. Carson v. Manor Care, Inc., 851 F.3d 293, 305 n.6 (4th Cir. 2017) (recognizing a district court does not abuse its discretion by declining to grant a motion that was never properly made); see also Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) ("Regardless of the merits of the desired amendment, a district court does not abuse its discretion by declining to grant a motion that was never properly made." (quotation omitted).

prosecute in accordance with the Federal Rules of Civil Procedure. <u>Failure to timely and</u> <u>adequately respond and show cause will result in summary dismissal of the Amended Complaint</u> <u>against those two remaining Defendants without prejudice.</u>

**IT IS SO ORDERED.**

Signed: February 27, 2024

Frank D. Whitney
United States District Judge